-

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BYRON H. LEVY, | No. 2:18-cv-02387-TLN-DB |
| Plaintiff, | |
| v. | **ORDER** |
| CITY OF SACRAMENTO, | |
| Defendant. | |

This matter is before the Court on Defendant City of Sacramento's ("Defendant" or "City") Motion for Summary Judgment.  (ECF No. 14.)  Plaintiff Byron H. Levy ("Plaintiff") filed an opposition.  (ECF No. 15.)  Defendant filed a reply.  (ECF No. 17.)  For the reasons set forth below, Defendant's motion is GRANTED.  (ECF No. 14.)

///

///

///

///

///

///

///

///

## I.   FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff is a City employee who seeks damages for alleged discriminatory and retaliatory conduct he experienced while working for Defendant.  (*See* ECF No. 1.)  Plaintiff is an African American male.  (*Id.* at 1.)  Plaintiff remains employed by the City as a Street Construction Laborer in the Department of Public Works, Street Maintenance Division.  (DSUF ¶ 1.)

On November 2, 2015, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"), alleging that between February 2015 and July 2015, Defendant denied Plaintiff the opportunity to work certain "out of class" assignments while other similarly situated individuals who were not African American were allowed to take such assignments.  (*Id.* at ¶¶ 26–27.)  On December 10, 2015, the EEOC and California Department of Fair Employment and Housing ("DFEH") issued Plaintiff a notice of his right to sue.[2]  (*Id.* at ¶ 28.)  On March 9, 2017, Plaintiff sent a letter to the City's Office of Civil Rights and stated his desire to file a complaint for harassment and discrimination based on race against Gabriel Morales ("Morales").[3]  (*Id.* at ¶ 31.)

In September 2017, Plaintiff filed another charge of discrimination against Defendant with the EEOC alleging Morales denied Plaintiff the opportunity to work "out of class" assignments, rotated him off previously assigned job equipment, gave him a 24-hour suspension in April 2016, followed him around during the workday, made inquiries about his whereabouts during and after work, demanded doctors' notes, and required him to attend discretionary meetings.  (*See id.* at ¶¶ 36–40.)  On June 1, 2018, the EEOC and DFEH issued Plaintiff notices of his right to sue.  (*Id.* at ¶ 41.)

///

---

[1]   The following facts are taken from Defendant's Statement of Undisputed Facts ("DSUF") (ECF No. 14-2) and are deemed undisputed unless otherwise noted.

[2]   Plaintiff filed charges with the EEOC and DFEH on November 2, 2015, June 1, 2018, and June 15, 2018, and each time received the same response: "EEOC was unable to conclude that the information obtained established a violation of the statutes."  (*See* DSUF ¶¶ 28, 41, 48.)

[3]   Morales is the Operations General Manager of the Maintenance Services Division and is not nor has ever been Plaintiff's direct supervisor.  (DSUF ¶ 2.)

On February 28, 2018, Plaintiff wrote a letter to the EEOC requesting it file a charge of retaliation against Defendant.  (*Id.* at ¶ 44.)  In his letter, Plaintiff indicated that after he filed his March 9, 2017 discrimination complaint with the City's Office of Civil Rights, Plaintiff received a notice of intended suspension on December 5, 2017, for an incident that occurred in April 2017. (*Id.* at ¶ 45.)  Plaintiff believed Morales was responsible for this discipline and that Defendant issued Plaintiff this notice of intended suspension in retaliation for the harassment complaint Plaintiff previously filed with the City's Office of Civil Rights about Morales.[4]  (*Id.* at ¶ 46.) Plaintiff filed his EEOC charge for retaliation against Defendant on April 5, 2018.[5]  (*Id.* at ¶ 47.) On June 15, 2018, the EEOC and DFEH issued notices to Plaintiff of his right to sue and indicated based on their investigation that the "EEOC was unable to conclude that the information obtained established a violation of the statutes."[6]  (DSUF ¶ 48; PRO ¶ 48.)

On August 29, 2018, Plaintiff filed a Complaint in this Court, alleging claims for: (1) unlawful discrimination on the basis of race in violation of 42 U.S.C. §§ 2000e–2000e-17 ("Title

---

[4]      Plaintiff generally disputes this statement but cites to paragraphs of his declaration that state the same information as stated here: he received a suspension for "an alleged horseplay in a work zone incident" as reported by Morales, Morales "made up" this incident "to get back at [Plaintiff] because he was angry that [Plaintiff] filed a charge of harassment," Plaintiff was not advised or counseled by his supervisor or Morales regarding this incident, and Plaintiff was not written up for this incident until after he filed the complaint.  (Plaintiff's Response and Objections to DSUF ("PRO"), ECF No. 15-1 ¶ 46 (citing ECF No. 15-2 ¶¶ 21–24).)  This does not create a genuine dispute as to why he felt the suspension was in retaliation for filing a harassment claim against Defendant.  The Court will consider the fact undisputed for the purposes of this motion.

[5]      Defendant notes in DSUF that he filed his EEOC charge on March 26, 2018.  (DSUF ¶ 47.)  Plaintiff disputes this fact and references a paragraph in his declaration (which states he filed his complaint on February 28, 2018) and Exhibit A (a copy of the EEOC right to sue letter). (PRO ¶ 48 (citing ECF No. 15-2 ¶ 25; ECF No. 15-3).)  After review of the charge of discrimination attached to the instant motion, the Court finds Plaintiff filed his charge of retaliation with the EEOC on April 5, 2018.  (ECF No. 14-12 at 31.)  The Court will consider the fact undisputed for the purposes of this motion.

[6]      Plaintiff disputes this fact and references a paragraph in his declaration (which states he received his right to sue from the EEOC on June 15, 2018) and Exhibit A (a copy of the EEOC right to sue letter).  (PRO ¶ 47 (citing ECF No. 15-2 ¶ 26; ECF No. 15-3).)  After reviewing Exhibit A, the Court finds Defendant is correct that the EEOC issued Plaintiff notice of his right to sue on June 15, 2018.  (*See* ECF No. 14-2 at 33.)  The Court will consider the fact undisputed for the purposes of this motion.

VII"); (2) unlawful discrimination on the basis of race in violation of California's Fair Employment and Housing Act ("FEHA") (California Government Code §§ 12940–12951); (3) failure to prevent discrimination and retaliation; and (4) retaliation.  (ECF No. 1 at 4–5.)  On September 30, 2021, Defendant filed the instant motion for summary judgment.  (ECF No. 14.)  On November 4, 2021, Plaintiff filed an opposition (ECF No. 15), and on November 10, 2021, Defendant filed a reply (ECF No. 17).

## II.    STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue of any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at 324 (internal quotation marks omitted).  Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact does exist.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must demonstrate that the fact in contention is material, *i.e.*, a fact that might affect the outcome of the

1   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

2   the dispute is genuine, *i.e.*, the evidence is such that a reasonable jury could return a verdict for

3   the nonmoving party.  *Id.* at 251–52.

4          In the endeavor to establish the existence of a factual dispute, the opposing party need not

5   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

6   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

7   trial."  *First Nat'l Bank of Ariz.*, 391 U.S. at 288–89.  Thus, the "purpose of summary judgment is

8   to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

9   trial.'"  *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's

10  note on 1963 amendments).

11         In resolving the summary judgment motion, the court examines the pleadings, depositions,

12  answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

13  R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

14  of the opposing party is to be believed and all reasonable inferences that may be drawn from the

15  facts pleaded before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S.

16  at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

17  obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

18  *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

19  1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

20  "must do more than simply show that there is some metaphysical doubt as to the material facts."

21  *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  "Where the record taken as a whole could not lead

22  a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.*

23         **III.   ANALYSIS**

24         Defendant argues: (1) Plaintiff's failure to make Rule 26 disclosures precludes him from

25  creating any triable issues of material fact; (2) Plaintiff's first and second claims for race

26  discrimination fail because he cannot establish he suffered adverse employment actions and there

27  are legitimate, nondiscriminatory explanations for Defendant's conduct; (3) Plaintiff's fourth

28  claim for retaliation fails because he fails to establish causation between his protected activity and

1  adverse employment actions and Defendant had a legitimate, non-retaliatory reason for

2  disciplining Plaintiff; and (4) Plaintiff's third claim for failure to prevent discrimination and

3  retaliation fails because his claims for discrimination and retaliation fail.  The Court will address

4  each argument in turn.

5                                  A.      Failure to Make Rule 26 Disclosures

6          Defendant argues it is undisputed that while it timely produced its Rule 26 disclosures to

7  Plaintiff, Plaintiff never served Defendant with his Rule 26 disclosures.  (ECF No. 14-1 at 17.)

8  Defendant contends, therefore, that Plaintiff cannot rely on unidentified information or witnesses

9  to supply evidence to create a genuine dispute of material fact, which means Plaintiff's ability to

10  oppose this motion or present evidence and prevail at trial is limited.  (*Id.*)  Defendant further

11  argues it is undisputed that Plaintiff's counsel neither propounded discovery requests nor deposed

12  any of Defendant's witnesses, and has generally failed to prosecute Plaintiff's complaint since it

13  was filed.  (*Id.*)  In opposition, Plaintiff does not contest Defendant's arguments but asserts

14  instead that his opposition "is based on documents produced by [D]efendant in its initial

15  disclosures and the testimony of [Plaintiff,] thus the sanctions requested by [Defendant are]

16  inappropriate."  (ECF No. 15 at 6.)  In reply, Defendant maintains that because Plaintiff did not

17  serve Rule 26 disclosures, Plaintiff's opposition is the entirety of what Plaintiff will be able to

18  present at trial to prove his claim for retaliation.  (ECF No. 17 at 2.)

19         Rule 26 "sets forth, at some length, the framework for civil disclosure and discovery" —

20  specifically, "the requirements for parties' mandatory disclosures, including initial disclosures,

21  expert disclosures and other pretrial disclosures."  *Republic of Ecuador v. Mackay*, 742 F.3d 860,

22  865 (9th Cir. 2014).  Rule 26 "requires counsel to provide to all other parties a description by

23  category and location of 'all documents, data compilations, and tangible things that are in the

24  possession, custody or control of the party and that the disclosing party may use to support its

25  claims or defenses, unless solely for impeachment.'"  *Intel Corp. v. VIA Techs., Inc.*, 204 F.R.D.

26  450, 451 (N.D. Cal. 2001) (citing Fed. R. Civ. P. 26(a)(1)(B)).  Rule 37 provides that "[i]f a party

27  fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not

28  allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a

1   trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

2        In the instant case, it is undisputed that Plaintiff failed to make the mandatory disclosures

3   under Rule 26.  Plaintiff does not argue in his opposition that the failure to make these disclosures

4   was substantially justified or is harmless.  (*See* ECF No. 15.)  Therefore, the Court finds that other

5   than what Defendant has itself produced, Plaintiff is not allowed to use information or witnesses

6   to supply evidence on a future motion, at a hearing, or at a trial.  *See* Fed. R. Civ. P. 37(c)(1).

7        Plaintiff also offers his own declaration in opposition to the instant motion.  This

8   declaration in substance is Plaintiff's testimony.  *See Intel Corp*, 204 F.R.D. at 451 (noting "a

9   declaration resembles a 'document,'" but "[i]n substance, however, it is testimony).  Courts have

10  found that a declaration "may be a 'document' within the meaning of [Rule 26(a)(1)(B)] in some

11  unusual instances, but the classic declaration gathered in anticipation of a summary-judgment

12  motion is not within the purview of the 'document' concept."  *Id.* at 451–52.  There is no Rule 26

13  "bar to previewing the testimony in a written form convenient to the court for purposes of

14  isolating the material fact issues."  *Id.*  Accordingly, the Court will consider Plaintiff's declaration

15  in the instant motion.

16            B.        Claims One and Two: Race Discrimination

17        Claims One and Two allege unlawful discrimination based on race in violation of Title

18  VII and FEHA.  (ECF No. 1 at 4–5.)

19        Title VII provides that an employer may not "discriminate against any individual with

20  respect to his compensation, terms, conditions, or privileges of employment, because of such

21  individual's race . . . or national origin."  42 U.S.C. § 2000e-2(a)(1).  FEHA uses largely the same

22  language and promotes the same objective as Title VII.  *See* Cal. Gov't Code § 12940(a); *Guz v.*

23  *Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 354 (2000); *Reno v. Baird*, 18 Cal. 4th 640, 647 (1998).  As a

24  result, the Title VII framework is applied to claims brought under FEHA, including

25  discrimination claims brought under a disparate treatment theory.[7]  *Metoyer v. Chassman*, 504

26  ─────────────────

27  [7]        "Title VII prohibits both intentional discrimination (known as 'disparate treatment') as
    well as, in some cases, practices that are not intended to discriminate but in fact have a
    disproportionately adverse effect on minorities (known as 'disparate impact')."  *Ricci v.*

28  *DeStefano*, 557 U.S. 557, 577 (2009).  Although not explicitly stated by Plaintiff, by alleging

1  F.3d 919, 941 (9th Cir. 2007), *abrogated on other grounds by Long v. Alameda Unified Sch.*

2  *Dist.*, 764 F. App'x 585 (9th Cir. 2019); *Guz*, 24 Cal. 4th at 354.

3        A plaintiff bringing a Title VII or FEHA racial discrimination action under a theory of

4  disparate treatment must demonstrate at trial that his or her employer took one or more adverse

5  employment actions against the plaintiff because of the plaintiff's national origin or

6  race.  *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92–93, 99–100 (2003); *Heard v. Lockheed*

7  *Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1748 (1996).  An adverse employment action is one

8  that "materially affect[s] the compensation, terms, conditions, or privileges of . . . employment."

9  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008); *see also Yanowitz v. L'Oreal USA,*

10  *Inc.*, 36 Cal. 4th 1028, 1052 (2005) (stating "an adverse employment action must materially affect

11  the terms and conditions, or privileges of employment to be actionable" in the FEHA context).

12        If an employer moving for summary judgment on a disparate treatment claim meets its

13  initial burden, "the plaintiff is presented with a choice regarding how to establish his or her

14  case."  *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).  The plaintiff may

15  proceed by using the burden-shifting framework first set out in *McDonnell Douglas Corp. v*

16  *Green*, 411 U.S. 792 (1973), or alternatively, may produce direct or circumstantial evidence that a

17  discriminatory reason motivated the defendant in taking the challenged actions against the

18  plaintiff.  *McGinest*, 360 F.3d at 1122; *see Heard*, 44 Cal. App. 4th at 1749 (indicating a FEHA

19  disparate treatment plaintiff need not proceed under *McDonnell Douglas* if the plaintiff has direct

20  evidence).  The plaintiff retains the burden of persuasion throughout, regardless of whether or not

21  the plaintiff chooses to use the *McDonnell Douglas* framework.  *Texas Dep't of Cmty. Affairs v.*

22  *Burdine* (*Burdine*), 450 U.S. 248, 256 (1981); *Guz*, 24 Cal. 4th at 356.

23        Under *McDonnell Douglas*, a Title VII or FEHA plaintiff "must first establish a prima

24  facie case of discrimination."  *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1123

25  (9th Cir. 2000); *Guz*, 24 Cal. 4th at 354 ("In particular, California has adopted the three-stage

26  burden-shifting test established by the United States Supreme Court for . . . claims of

27  ─────────────────────

28  intentional discrimination on the part of Defendant, it appears that Plaintiff is bringing his
discrimination claims under a disparate treatment theory.

discrimination . . . based on a theory of disparate treatment.").  A plaintiff must show: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."  *Chuang*, 225 F.3d at 1123; *Guz*, 24 Cal. 4th at 355 (setting forth substantially the same elements in the FEHA context).  The fourth element can also be characterized as "some other circumstance suggests discriminatory motive."  *Guz*, 24 Cal. 4th at 355.

This shifts the "burden of production, but not persuasion, . . . to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action."  *Chuang*, 225 F.3d at 1123–24.  "To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for" the challenged adverse employments actions.  *Lyons v. England*, 307 F.3d 1092, 1112 (9th Cir. 2002) (quoting *Burdine*, 450 U.S. at 255).  Whether a defendant has met its burden of production involves "no credibility assessment."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  "In other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the defendant's evidence at the summary judgment stage, even if it has reason to disbelieve that evidence."  *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004).

If the defendant meets this burden of production, any presumption that the defendant discriminated "drops from the case."  *St. Mary's Honor Ctr.*, 509 U.S. at 507–11; *see also Guz*, 24 Cal. 4th at 356 (explaining that the presumption "disappears" at this point).  The plaintiff must then be given the opportunity to demonstrate that the proffered reason or reasons were pretext for intentional discrimination.  *Burdine*, 450 U.S. at 255–56; *Guz*, 24 Cal. 4th at 356.

The plaintiff may offer additional evidence to rebut the employer's proffered reasons but the plaintiff is not necessarily required to produce evidence in addition to the evidence produced to establish the prima facie case.  *Lyons*, 307 F.3d at 1112–13; *Chuang*, 225 F.3d at 1127.  This is because a reasonable factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out his prima facie case if the factfinder believes that the employer's proffered nondiscriminatory reasons lack credibility.  *Lyons*, 307 F.3d at 1112–13

(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000)); *see also Chuang*, 225 F.3d at 1127 (same).

To establish that a defendant's nondiscriminatory explanation is pretext for discrimination, a plaintiff may rely on circumstantial evidence or direct evidence or both. *See Chuang*, 225 F.3d at 1127. Typically, circumstantial evidence offered by a plaintiff to prove pretext will take one of two forms. *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090, 1095 (9th Cir. 2005); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003), *as amended* (Jan. 6, 2004). The plaintiff may "make an affirmative case that the employer is biased." *Coghlan*, 413 F.3d at 1095; *Stegall*, 350 F.3d at 1066 (describing the first option as "persuading the court that a discriminatory reason more likely motivated the employer"). Or, the plaintiff may "make his case negatively, by showing that the employer's proffered explanation for the adverse action is 'unworthy of credence.'" *Coghlan*, 413 F.3d at 1095.

In employment discrimination actions, the plaintiff "need produce very little evidence to overcome an employer's motion for summary judgment . . . because the ultimate question is one that can only be resolved through a searching inquiry — one that is most appropriately conducted by a factfinder, upon a full record." *Chuang*, 225 F.3d at 1124 (internal quotations and citation omitted). Consequently, the "requisite degree of proof necessary to establish a prima facie case for Title VII . . . claims on summary judgment is minimal and does not even need to rise to the level of preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994), *as amended on denial of reh'g* (July 14, 1994) (emphasis omitted). "The plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." *Id.* (internal quotations and citation omitted). "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Burdine*, 450 U.S. at 254.

Defendant agrees the burden-shifting framework established by *McDonnell Douglas* is applicable to the instant summary judgment motion. (*See* ECF No. 14-1 at 18–22.) Although not

explicitly articulated by Plaintiff, he also appears to agree *McDonnell Douglas* applies.[8]  (*See* ECF No. 15 at 3–5.)  Defendant argues Plaintiff cannot establish a prima facie case of race discrimination because he cannot establish he suffered adverse employment actions.  (ECF No. 14-1 at 17–21.)  Defendant also argues that there are legitimate, nondiscriminatory explanations for its conduct.  (*Id.* at 21–22.)  The Court will consider the arguments within the *McDonnell Douglas* framework.

### i.     Establishment of a Prima Facie Case

As previously noted, to establish a prima facie case of race discrimination, Plaintiff must establish: "(1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably."  *Chuang*, 225 F.3d at 1123; *Guz*, 24 Cal. 4th at 355. Defendant does not address or dispute the first, second, and fourth elements.  (*See* ECF Nos. 14-1, 17.)  With respect to the third element, Defendant argues Plaintiff cannot establish an adverse employment action[9] because: (1) the denial of out of class work is time-barred with respect to the November 2015 charge; (2) the denial of out of class work, Plaintiff's suspension, Morales's inquiry into Plaintiff's whereabouts, Morales's criticism of Plaintiff's work, and Morales following Plaintiff around are time-barred with respect to the September 2017 charge; and (3) Plaintiff fails to provide sufficient evidence of Morales's criticism of Plaintiff's work,[10] that Morales made Plaintiff attend discretionary meetings, or that Morales made demands for

---

[8]     Plaintiff does not explicitly address his discrimination claims in his opposition, but with respect to his retaliation claim, asserts that he has established a prima facie case and that the reasons articulated by Defendant are pretextual.  (ECF No. 15 at 3–5.)

[9]     Plaintiff's EEOC charge identifies the following adverse employment actions: (1) denial of the opportunity to work on out of class assignments; (2) rotation off previously-assigned job site equipment; (3) a three-day suspension; (4) harassing conduct from Morales, including following him around through the workday, inquiring about his whereabouts during and after work hours, demanding doctor's notes even though Plaintiff is not on sick leave verification, and insisting that he attend discretionary meetings.  (*See* ECF No. 14-12 at 2, 21–22.)

[10]     Because the Court finds below that Morales's improper evaluation of Plaintiff's work is time-barred, it declines to address whether there is sufficient evidence to establish this as an adverse employment action.

1   documentation while Plaintiff was out.  (ECF No. 14-1 at 18–21.)  The Court will first address the

2   timeliness arguments.  The Court finds the alleged adverse employment actions identified in the

3   first two arguments are time-barred under Title VII and FEHA, with the exception of Morales

4   following Plaintiff around, which is not time-barred by FEHA.  The Court will then address in

5   turn whether Plaintiff adequately establishes as adverse employment actions the following:

6   Morales following him around, Morales making him attend discretionary meetings, and Morales

7   demanding documentation.

8                                   a)   Whether the Adverse Employment Actions are Time-Barred

9                                        1)   Denial of Out of Class Work with Respect to the

10                                               November 2015 Charge

11        Defendant argues the following is undisputed: Plaintiff filed an EEOC charge on

12   November 2, 2015, alleging he was denied "out of class" work between February 2015 and July

13   2015; the EEOC and DFEH issued Plaintiff his right to sue letters for this charge on December

14   10, 2015; and Plaintiff did not timely commence suit on these claims because he did not file this

15   suit until August 29, 2018.  (ECF No. 14-1 at 19 (citing DSUF ¶¶ 26–29).)  Plaintiff does not

16   dispute these facts or even address this argument in his opposition.  (*See* ECF No. 15; *see also*

17   PRO ¶¶ 26–29.)

18        A Title VII plaintiff has within 90 days of the date the EEOC dismisses the claim to file a

19   civil action.  42 U.S.C. § 2000e-5(f)(1) ("If a charge filed with the [EEOC] ... is dismissed by the

20   [EEOC], . . . the [EEOC or otherwise appropriate entity] shall so notify the person aggrieved and

21   within ninety days after the giving of such notice a civil action may be brought.").  If a civil

22   action is not filed within the 90 days, then it becomes time-barred.  *Payan v. Aramark Mgmt.*

23   *Servs. Ltd. P'ship*, 495 F.3d 1119, 1121–22 (9th Cir. 2007).  A FEHA plaintiff has within one

24   year of receipt of the right to sue letter from the DFEH to file a civil action.  Cal. Gov't Code §

25   12965(b); *Downs v. Dep't of Water & Power*, 58 Cal. App. 4th 1093, 1099 (1997).

26        In the instant case, Plaintiff waited more than 90 days from the date the EEOC dismissed

27   his claim and more than one year of receipt of his right to sue letter from the DFEH.

28   Accordingly, the Court finds the denial of out of class work as an adverse employment action is

1    time-barred under Title VII and FEHA.

2                                    *2)*   *Denial of Out of Class Work, Plaintiff's Suspension,*

3                                          *Morales's Inquiry into Plaintiff's Whereabouts, and*

4                                          *Morales's Criticism with Respect to the September 2017*

5                                          *Charge*

6              Defendant notes that Plaintiff filed another EEOC charge in September 2017 alleging

7    discrimination.  (ECF No. 14-1 at 19.)  Defendant states that this charge does not include dates on

8    which any of the alleged conduct occurs, so Defendant instead references Plaintiff's March 2017

9    letter to the City's Office of Civil Rights to determine the dates on which the conduct alleged in

10   this charge occurred.  (*Id.*)  Defendant argues the following is undisputed: Plaintiff filed another

11   EEOC charge in September 2017; Plaintiff already made claims about the alleged denial of "out

12   of class" work assignments in the prior 2015 EEOC charge; Plaintiff's 24-hour discipline[11]

13   occurred in April 2016; Morales asked Plaintiff about his whereabouts on May 14, 2016; Morales

14   allegedly improperly evaluated Plaintiff on one occasion when Plaintiff was rotated off the job

15   equipment on May 15, 2016; and Plaintiff did not file any of these claims with the EEOC until

16   September 2017.  (ECF No. 14-1 at 19–20 (citing DSUF ¶¶ 26–27, 32–34, 36).)  Again, Plaintiff

17   does not dispute these facts or even address this argument in his opposition.  (*See* ECF No. 15;

18   *see also* PRO ¶ 26–27, 32–34, 36.)

19             A Title VII plaintiff must file a charge with the EEOC within 180 days "after the alleged

20   unlawful employment practice occurred."  42 U.S.C. § 2000e–5(e)(1).  A FEHA plaintiff must

21   file a complaint with the DFEH within one year of the alleged unlawful employment practice.

22   Cal. Gov't Code § 12960(e).

23             First, the Court notes Plaintiff's March 2017 letter with his request to file a charge of

24   discrimination/harassment, which preceded the filing of his September 2017 charge, indicates that

25   the denial of "out of class" assignments occurred on February 5, 2015, March 13, 2015, March

26   _____

11       Defendant states in its briefing numerous times that it was a *three-day* suspension in April

27   2016, but a review of the paragraphs to which Defendant cites in its Statement of Undisputed
     Facts reveals that it was a *24-hour* suspension in April 2016, which Plaintiff does not contest.

28   (*See* DSUF ¶ 37; PRO ¶ 37.)

                                          13

1   16, 2015, March 17, 2015, April 22, 2015, July 13, 2015, and July 17, 2015.  (ECF No. 14-2 at

2   15–19; *see also* ECF No. 14-12 at 9.)  As already indicated above, to the extent that these dates

3   represent the denial of out of class assignments, these claims are time-barred.

4           Second, Defendant is correct that Plaintiff did not timely file the following claims:

5   Plaintiff's 24-hour discipline in April 2016; Morales allegedly asking about his whereabouts on

6   May 14, 2016; and Morales allegedly improperly evaluating Plaintiff upon rotating him off job

7   site equipment on May 15, 2016.  (ECF No. 14-1 at 19–20.)  The EEOC charge and DFEH

8   complaint were both filed more than a year after these adverse employment actions allegedly

9   occurred.  Therefore, the Court finds Plaintiff's assertion of the 24-hour suspension, Morales's

10  inquiry into Plaintiff's whereabouts, and Morales's improper evaluation of Plaintiff's work as

11  adverse employment actions to be time-barred under Title VII and FEHA.

12          Third, Defendant argues Plaintiff's claim that Morales followed him around on November

13  1, 2016, was not timely filed with the EEOC.  (ECF No. 14-1 at 20 (citing DSUF ¶ 36).)

14  Defendant cites paragraph 36, which states that "on November 1, 2016, Mr. Morales walked up to

15  [Plaintiff's] truck and looked at him."  (DSUF ¶ 36.)  Plaintiff does not dispute this in response,

16  and Plaintiff's March 2017 letter confirms this conduct.  (PRO ¶ 36; ECF No. 14-12 at 18.)  The

17  only incident in the March 2017 letter in which Morales actually *follows* Plaintiff is on February

18  27, 2017, when Morales followed Plaintiff at the Navy Yard when Plaintiff was dumping material

19  from his truck.  (*Id.*; *see also* DSUF ¶ 35; PRO ¶ 35.)  Both of these incidents are time-barred

20  under Title VII because the September 2017 charge was filed more than 180 days after the

21  alleged adverse employment practices.  However, neither of them are time-barred under FEHA

22  because the September 2017 charge was filed within one year of the alleged unlawful

23  employment practices.  The Court will therefore analyze whether Plaintiff adequately establishes

24  the conduct on both of these dates[12] as adverse employment actions.

25          In sum, the Court finds all of the foregoing alleged adverse employment actions to be

26  time-barred, except Morales following Plaintiff around.  The Court will next evaluate Morales

27  

28  [12]        The Court will generally term this conduct "Morales following Plaintiff around."

following Plaintiff around — and the remaining alleged adverse employment actions Defendant

does not challenge as time-barred — to determine whether Plaintiff establishes a prima facie case.

<b>b)  <u>Whether Plaintiff Adequately Establishes the Remaining</u></b>

<b><u>Alleged Adverse Employment Actions</u></b>

<i>1)  Morales Following Plaintiff Around</i>

Defendant contends "Morales did not follow [Plaintiff] in the Corporation Yard or hide

behind cars to watch [Plaintiff] on November 1, 2016 or February 27, 2017."  (DSUF ¶ 56.)

Plaintiff disputes this in response, citing to paragraphs 10 through 13 of his own declaration.

(PRO ¶ 56.)  Plaintiff states in paragraphs 10 through 13:

> 10. On or around February 2017, at the end of my shift, I was entering the Na[v]y Yard to dump materials out of my truck, OGS Morales was leaving the yard in his City vehicle.  Upon seeing me entering the yard, OGS Morales made a U-turn and followed far behind me.

> 11. He continued to drive slow behind me, and then began to hide behind parked vehicles to observe me.  I was very worried, concerned and afraid for my safety and my job.

> 12. I notified PMS Campos of the incident by OGS Morales constantly following me around and harassing me.

(ECF No. 15-2 at 2–3.)  Plaintiff otherwise does not mention any incidents on November 1, 2016,

in his declaration.  (*See id.*)

Plaintiff's opposition is devoid of any case law or any argument as to how these actions

would constitute an adverse employment action.  (*See* ECF No. 15.)  Plaintiff makes no argument

as to how Morales following him around "*materially affect[s]* the compensation, terms,

conditions, or privileges of employment," and thereby constitutes an adverse employment action.

*See Davis*, 520 F.3d at 1089 (emphasis added).  Therefore, Plaintiff has not met his burden to

establish that Morales following him around is an adverse employment action.

<i>2)  Morales's Requirement of Plaintiff's Attendance at</i>

<i>Discretionary Meetings</i>

Defendant argues that it is undisputed that Morales did not require Plaintiff to attend

discretionary meetings.  (ECF No. 14-1 at 21 (citing DSUF ¶ 51).)  Plaintiff does not address this

15

argument in his opposition, but disputes this fact in response to Defendant's Statement of Undisputed Facts, citing to his declaration. (*See* ECF No. 15; PRO ¶ 51 (citing ECF No. 15-2 ¶ 5).)

Paragraph 5 of Plaintiff's declaration states in full:

> Following my filing of the complaint with EEOC, I was subjected to retaliatory actions such as undue scrutiny of my work, micro[-]managing my work, denying me of out of class work assignments, improper evaluation of my work and demands for documentation whenever I was out sick for one day when other coworkers were not scrutinized in the same manner or documentation demanded of them when they are out sick for one day.

(ECF No. 15-2 ¶ 5.) Paragraph 5 does not contain any information about Morales requiring Plaintiff attend discretionary meetings. The remainder of Plaintiff's declaration does not include this information either. (*See* ECF No. 15-2.) Based on this evidence, the Court finds Plaintiff cannot establish Morales required Plaintiff to attend discretionary meetings. Therefore, the Court finds that this cannot constitute an adverse employment action.

*3) Morales's Demands for Documentation*

Defendant argues that it is undisputed that Morales did not make demands for documentation when Plaintiff was out. (ECF No. 14-1 at 21 (citing DSUF ¶ 51).) Plaintiff does not address this argument in his opposition, but disputes this fact in response to Defendant's Statement of Undisputed Facts, citing to his declaration. (*See* ECF No. 15; PRO ¶ 51 (citing ECF No. 15-2 ¶ 5).)

Paragraph 5 of Plaintiff's declaration states that Morales demanded documentation whenever Plaintiff was out sick for one day, "when other coworkers were not scrutinized in the same manner or documentation demanded of them when they are out sick for one day." (ECF No. 15-2 ¶ 5.) As stated previously, Plaintiff's opposition is devoid of any case law or any argument as to how these actions would constitute an adverse employment action. (*See* ECF No. 15.) Plaintiff makes no argument as to how Morales's demands for documentation "*materially affect[s]* the compensation, terms, conditions, or privileges of employment," and thereby constitutes an adverse employment action. *See Davis*, 520 F.3d at 1089 (emphasis added).

/ / /

16

1    Therefore, Plaintiff has not met his burden to establish that Morales's demands for

2    documentation is an adverse employment action.

3    Based on the foregoing, Plaintiff fails to establish that he suffered an adverse employment

4    action and therefore fails to establish a prima facie case of race discrimination.  Accordingly,

5    Defendant's motion with respect to Claims One and Two is GRANTED.

6    C.    Claim Four: Retaliation

7    Claim Four alleges retaliation.  (ECF No. 1 at 5.)  Plaintiff's Complaint does not

8    specifically allege what law Defendant has violated, but his opposition cites to Title VII and

9    FEHA case law on retaliation.  (*See id.*; *see also* ECF No. 15 at 3–6.)  The Court will therefore

10   construe Claim Four as alleging retaliation in violation of Title VII and FEHA.

11   A plaintiff opposing a motion for summary judgment on retaliation claims under Title VII

12   and FEHA may use the *McDonnell Douglas* burden-shifting framework.  *McGinest*, 360 F.3d at

13   1124 (setting out the standard for Title VII); *Moore v. Regents of Univ. of Cal.*, 248 Cal. App. 4th

14   216, 244 (2016) (setting out the standard for FEHA).  To plead a prima facie case of retaliation, a

15   plaintiff must point to sufficient evidence to permit a reasonable factfinder to conclude that: (1)

16   he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there

17   was a causal link between his activity and the employment decision.  *McGinest*, 360 F.3d at 1124;

18   *Moore*, 248 Cal. App. 4th at 244.

19   With respect to the third causation element, "a plaintiff may establish a causal link

20   between the protected activity engaged in and the adverse action taken by circumstantial

21   evidence, including the employer's knowledge of the protected activity and the proximity in time

22   between the protected action and the adverse employment act."  *Goins v. Cnty. of Merced*, 185 F.

23   Supp. 3d 1224, 1234 (E.D. Cal. 2016) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir.

24   1988); *Passantino v. J&J Consumer Prods., Inc.*, 212 F.3d 493, 507 (9th Cir. 2000)).  "At the

25   prima facie stage of a retaliation case, [t]he causal link element is construed broadly so that a

26   plaintiff merely has to prove that the protected activity and the negative employment action are

27   not completely unrelated."  *Poland v. Chertoff*, 494 F.3d 1174, 1180 n.2 (9th Cir. 2007) (internal

28   quotation omitted).

As with disparate treatment cases, once the prima facie case is established, the burden of production shifts to the employer to present a legitimate, non-retaliatory reason for the adverse employment action. *McGinest*, 360 F.3d at 1124; *Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1112 (2007). If the employer carries this burden, a plaintiff must demonstrate a genuine issue of material fact as to whether the reason advanced by the employer is pretext for retaliation. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000); *see Loggins*, 151 Cal. App. 4th at 1112. The Ninth Circuit has determined that "[i]n some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext." *Dawson v. Entek Intern.*, 630 F.3d 928, 937 (9th Cir. 2011). Under FEHA, however, temporal proximity alone is insufficient to establish pretext. *Loggins*, 151 Cal. App. 4th at 1112 (evidence of temporal proximity "*only satisfies* the plaintiff's initial burden" and therefore "an employee seeking to avoid summary judgment cannot simply rest on the prima facie showing, but must adduce substantial additional evidence from which a trier of fact could infer the articulated reasons for the adverse employment action were untrue or pretextual") (internal quotations omitted) (emphasis in original).

Defendant agrees the burden-shifting framework established by *McDonnell Douglas* is applicable to the instant summary judgment motion. (*See* ECF No. 14-1 at 18–22.) Although not explicitly articulated by Plaintiff, he also appears to agree McDonnell Douglas applies.[13] (*See* ECF No. 15 at 3–5.) Defendant argues Plaintiff fails to establish causation between his protected activity and adverse employment action and that it had legitimate, non-retaliatory reasons for disciplining Plaintiff. (ECF No. 14-1 at 23–26.) The Court will consider the arguments within the *McDonnell Douglas* framework.

///

///

///

---

[13] As previously stated, Plaintiff asserts with respect to his retaliation claim that he has established a prima facie case and that the reasons articulated by Defendant are pretextual. (ECF No. 15 at 3–5.)

*i.     Establishment of a Prima Facie Case*[14]

As previously noted, to plead a prima facie case of retaliation, a plaintiff must point to sufficient evidence to permit a reasonable factfinder to conclude that: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) there was a causal link between his activity and the employment decision.  *McGinest*, 360 F.3d at 1124; *Moore*, 248 Cal. App. 4th at 244.  With respect to the first element, Plaintiff engaged in a protected activity by filing EEOC charges of discrimination.  (*See* ECF No. 14-12 at 2, 21–23); *see also Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003) ("Protected activity includes the filing of a charge or a complaint . . . .").  With respect to the second element, Defendant does not dispute that the adverse employment actions at issue — suspension and denial of promotional opportunities and transfer requests — are indeed adverse employment actions.[15] (*See* ECF No. 14-1 at 23.)  With respect to the third element, Defendant argues Plaintiff fails to establish causation between his EEOC charges and his suspensions, denial of promotional opportunities and transfers.  (*Id.*)  The Court will consider each in turn.

a)  Causation Between EEOC Charges and Plaintiff's Suspension

Defendant argues the retaliatory acts were not "very close" in time to the alleged adverse actions suffered by Plaintiff and therefore there is no presumption of causation.  (*Id.* at 24.) Defendant notes Plaintiff was disciplined in April 2017 and December 2017 — two full years after Plaintiff filed his 2015 EEOC charge.  (*Id.*)  With respect to the April 2017 discipline, Defendant also argues it initiated Plaintiff's April 2017 discipline in February 2017, before Plaintiff submitted his March 2017 letter to the City's Office of Civil Rights.  (*Id.* (citing DSUF

---

[14]     Plaintiff also devotes almost a page of his opposition to arguing that his complaint for retaliation with the EEOC and his subsequent lawsuit are timely.  (ECF No. 15 at 6.)  Because Defendant does not move for summary judgment on this ground, the Court need not and does not address this argument.

[15]     Defendant notes that in support of his retaliation claim, Plaintiff's Complaint also alleges the same adverse employment actions he cited in support of his discrimination claims.  (ECF No. 14-1 at 22.)  Defendant argues that the alleged adverse employment actions cited in support of his discrimination claims fail for the same reasons as argued previously.  (*Id.* at 23.)  Based on the previous section of this Order, the Court agrees.  The Court will therefore only address the additional adverse employment actions alleged in support of the retaliation claim.

¶¶ 11–12).)  With respect to the December 2017 discipline, Defendant finally notes that Plaintiff's conduct underlying his December 2017 discipline occurred after he submitted the March 2017 letter.  (*Id.*)  In opposition, Plaintiff asserts the "causal nexus . . . is easily established" because Defendant "engaged in a series of retaliatory acts against him" after he filed his complaint for discrimination to the City's Office of Civil Rights in March 2017.  (ECF No. 15 at 4.)  Plaintiff only identifies Defendant's decision "to initiate adverse employment action against him" for "an alleged horseplay incident" as an example of these retaliatory acts (and also contends it never happened).  (*Id.* at 3–4.)  Plaintiff does not provide any evidence in support of his argument, which entirely hinges on temporal proximity between his March 2017 complaint and the two disciplinary actions.  (*See id.*)

Causation "may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'"  *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000) (citing *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987)); *see also Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011) ("In some cases, temporal proximity can by itself constitute sufficient circumstantial evidence of retaliation for purposes of both the prima facie case and the showing of pretext."); *Passantino*, 212 F.3d at 507 (noting causation can be inferred from timing alone).  Under FEHA, however, temporal proximity alone may satisfy the prima facie case but is insufficient to establish pretext.  *Loggins*, 151 Cal. App. 4th at 1112 ("[T]emporal proximity, although sufficient to shift the burden to the employer . . . does not, without more, suffice also to satisfy the secondary burden borne by the employee to show a triable issue of fact on whether the employer's articulated reason was untrue and pretextual.").

Plaintiff filed EEOC discrimination charges in November 2015 and September 2017, filed a discrimination complaint with the City's Office of Civil Rights in March 2017, sent a letter to the EEOC in February 2018 requesting a retaliation charge be filed against Defendant, and filed the EEOC retaliation charge in April 2018.  (ECF No. 14-12 at 2, 15–19, 21–22, 28–31.)  Plaintiff was suspended for 24 hours on April 24, 2017 for operating a City vehicle without a hands-free device on February 15, 2017.  (ECF No. 14-11 at 49–51.)  Plaintiff was suspended for 40 hours (or five days) starting December 11, 2017 for pretending to jump into traffic in front of an

1   approaching vehicle while on a work site (the "alleged horseplay incident") and for pulling away

2   from a fuel pump with the nozzle still attached to his vehicle, both of which occurred on April 21,

3   2017.  (*Id.* at 56–58.)  Plaintiff also received notices of intent to suspend him prior to his actual

4   suspensions.  (*Id.* at 52–54, 59–61.)  The timeline is as follows: EEOC discrimination charge filed

5   in November 2015; complaint filed March 2017; suspension on April 24, 2017; EEOC

6   discrimination charge filed September 2017; suspension on December 11, 2017; letter sent

7   February 2018; and EEOC retaliation charge filed in April 2018.

8           With respect to the April 2017 suspension, the Court finds that temporal proximity may be

9   sufficient to establish causation because there is only an approximately one-month gap between

10   Plaintiff filing his discrimination complaint with the City in March 2017 and his suspension in

11   April 2017.  Case law has found that three- and seven-month gaps between the protected activity

12   and adverse employment action are insufficient to establish causation.  *See Breeden*, 532 U.S. at

13   273 (EEOC's issuance of a right to sue letter to a school district employee three months prior to

14   the employee's supervisor announcement that she was considering employee's transfer was

15   insufficient to establish the causation element); *Cornwell*, 439 F.3d at 1036 (finding that as seven

16   months passed between plaintiff's initial conversation complaining to human resources and his

17   termination letter, "[t]he district court did not err in concluding too much time passed between

18   [the plaintiff's] complaints and his eventual termination for a reasonable jury to conclude that [the

19   plaintiff's] complaints caused [his employer] to fire him.")  However, neither party cites to any

20   case law regarding an approximately one-month gap.  The Court therefore finds that Plaintiff

21   establishes causation sufficient for his prima facie case of retaliation based on the temporal

22   proximity between filing his discrimination complaint with the City in March 2017 and his

23   suspension in April 2017.

24           With respect to the December 2017 suspension, the Court notes December 2017 is too far

25   away in time to his complaint in March 2017 or his EEOC discrimination charge filed in

26   September 2017.  As mentioned previously, temporal proximity is the only argument Plaintiff

27   provides in support of causation.  In light of the foregoing case law, an approximately nine-month

28   gap between the protected activity and adverse employment action is insufficient to establish

1    causation.  *See Breeden*, 532 U.S. at 273; *Cornwell*, 439 F.3d at 1036.  The Court therefore finds

2    that Plaintiff does not establish causation sufficient for his prima facie case of retaliation based on

3    the temporal proximity between filing his discrimination complaint with the City in March 2017

4    and his suspension in December 2017.

5                                    b)   Causation Between EEOC Charges and Denial of Promotional

6                                         Opportunities and Transfers

7           Defendant notes Plaintiff submitted six applications for promotional opportunities and

8    transfer requests to the Department of Utilities (not 17 as Plaintiff claims in his deposition), but

9    Plaintiff and Morales work in the Department of Public Works.  (ECF No. 14-1 at 25.)  Defendant

10   argues therefore that there is no causation between Plaintiff's discrimination complaints and his

11   failure to secure a new position in a different City department.  (*Id.*)  Defendant also argues it is

12   undisputed that Plaintiff did not apply for available supervisory positions even though he was

13   qualified to fill them.  (*Id.*)  Defendant finally contends that to the extent Plaintiff alleges he

14   requested and was denied a transfer to the City's other Corporation Yard, laborers are rotated on a

15   schedule set with the local union and Plaintiff cannot request nor can Morales grant a transfer

16   outside this schedule.  (*Id.*)  Plaintiff does not address any of these arguments in his opposition.

17   (*See* ECF No. 15.)  The Court thus finds that Plaintiff fails to establish causation between his

18   protected activity and a denial of promotional opportunities and transfers.

19          Based on the foregoing, Plaintiff's inference of retaliation is as follows: because Plaintiff

20   engaged in protected activity by filing a discrimination complaint with the City in March 2017,

21   Defendant retaliated against him when it suspended him in April 2017.  Accordingly, Plaintiff has

22   established a prima facie case of retaliation, and the burden of production shifts to Defendant to

23   articulate a legitimate, non-retaliatory reason for his suspension.  *See McGinest*, 360 F.3d at 1124;

24   *Loggins*, 151 Cal. App. 4th at 1112–13.

25   ///

26   ///

27   ///

28   ///

1              *ii.*        *Defendant's Legitimate, Non-Retaliatory Reasons*[16]

2          Defendant argues it disciplined Plaintiff pursuant to its policy of progressive discipline.[17]

3    (ECF No. 14-1 at 25 (citing DSUF ¶¶ 4, 5, 9).)  Namely, Defendant contends it previously sent a

4    letter of reprimand to Plaintiff for the same conduct for which he was disciplined in April 2017

5    and offered to reduce the suspension but Plaintiff refused.  (*Id.* (citing DSUF ¶¶ 10, 13).)

6          The Court notes that Defendant cites to the declaration of Aaron Donato, the Labor

7    Relations Manager for Defendant, who avers that in 2015, Plaintiff "received a letter of

8    reprimand for using a cell phone without a hands-free device while operating a City vehicle."

9    (ECF No. 14-6 at 1–2.)  Donato further avers that Defendant agreed to reduce Plaintiff's

10   suspension, but he refused to sign the settlement agreement.  (*Id.* at 2.)  Donato does not attach

11   the 2015 letter to his declaration, but the April 21, 2017 letter notifying Plaintiff of his suspension

12   notes that Plaintiff has been disciplined in the past — specifically, "[o]n August 24, 2015,

13   [Plaintiff] received a letter of reprimand for using a cellular phone without a hands-free device

14   ───────────────

15   [16]     Defendant makes arguments as to the December 2017 discipline.  (ECF No. 14-1 at 25–26.)  However, the Court declines to address these arguments as Plaintiff only establishes a prima facie case with respect to the April 2017 discipline.

16

17   [17]     Defendant cites to the declaration of Shelley Banks-Robinson, the Director of Defendant's Human Resources Department.  (*See* ECF No. 14-4.)  Banks-Robinson avers that Defendant:

18            applies a practice of "progressive discipline" to address continued

19            workplace violations by employees . . . when an employee violates the Department's workplace policies, they are disciplined according

20            to the severity of the violation and are put on notice that further violation may result in further discipline, up to and including

21            termination . . . When an employee is disciplined, [Defendant] makes numerous considerations in deciding what level of discipline to

22            impose on the employee.  [Defendant] considers the employee's tenure with [Defendant], the employee's previous training and

23            retraining, the employee's previous discipline, the severity of the employee's conduct at issue, the employee's previous discipline for

24            the same conduct, and the employee's level of remorsefulness for the conduct leading to the present discipline.

25   (*Id.* at 1–2.)  Plaintiff disputes this and cites to his own declaration, which does not contest that Defendant applies a practice of progressive discipline but rather argues that Defendant failed to

26   follow its own progressive discipline procedures without citing any further evidence.  (ECF No. 15-2 ¶¶ 17, 21, 22, 23, 24.)  At this stage of the *McDonnell Douglas* framework, however, the

27   Court does not make a credibility determination on Defendant's evidence.  *Bodett*, 366 F.3d at

28   742.

1    while operating a city vehicle." (ECF No. 14-11 at 50.)  The December 5, 2017 letter notifying

2    Plaintiff of his 40-hour suspension also notes this August 24, 2015 letter.  (*Id.* at 57.)

3        As previously noted, the Court at this juncture does not "make a credibility determination

4    on the defendant's evidence . . . even if it has reason to disbelieve that evidence," but merely

5    determines Defendant has adequately presented a legitimate non-discriminatory reason for the

6    action.  *Bodett*, 366 F.3d at 742.  Thus, the burden shifts back to Plaintiff to demonstrate a

7    genuine issue of material fact as to whether these reasons advanced by Defendant are merely

8    pretext for retaliation.  *Brooks*, 229 F.3d at 928; *Loggins*, 151 Cal. App. 4th at 1112.

9                    *iii.        Plaintiff's Showing of Pretext*[18]

10       "To establish that a non-retaliatory explanation is pretext for discrimination, plaintiffs

11   may rely on circumstantial evidence, which . . . must be specific and substantial to create a

12   genuine issue of material fact."  *Goins*, 185 F. Supp. 3d at 1236 (internal quotations and citation

13   omitted).  Plaintiff argues Defendant's failure to follow its own progressive discipline procedures

14   is evidence of pretext.  (ECF No. 15 at 4–5.)  Specifically, Plaintiff asserts Defendant's issuance

15   of its December 5, 2017 notice of intent to suspend him for the alleged horseplay incident without

16   an initial warning or reprimand "of the alleged infraction until after he filed his harassment claim"

17   is "circumstantial evidence of pretext for retaliation[.]"  (*Id.*)  Plaintiff also asserts Defendant

18   "lied and reprimanded [him]" for "us[ing] his vehicle improperly," as Plaintiff appealed the

19   reprimand, the matter was arbitrated, the arbitrator decided in Plaintiff's favor, and yet Defendant

20   has refused to remove this incident from the list of other infractions it has counted against

21   Plaintiff.  (*Id.*)  Plaintiff also vaguely argues that "failure to investigate the subject matter of the

22   underlying complaint can be used as circumstantial evidence of pretext regarding the subsequent

23   disciplinary action."  (*Id.*)

24       The Court notes as an initial matter that much of Plaintiff's argument regarding pretext

25   refers to the December 2017 discipline.  However, as noted previously, Plaintiff fails to establish

26   ─────────────────────
     [18]    Plaintiff makes an argument in his opposition about Morales following him around,

27   notifying "PMS Campos" of this incident, and Campos's lack of response to Plaintiff.  (ECF No.
     15 at 5.)  For the reasons already stated herein, the Court declines to address Morales following

28   him around with respect to Plaintiff's retaliation claim.

a prima facie case of retaliation based on the December 2017 discipline for the alleged horseplay incident.  Because Plaintiff could not meet his initial burden with respect to the discipline, the Court declines to address Plaintiff's arguments regarding pretext.

Construing Plaintiff's arguments in opposition generously to include the April 2017 discipline and a failure to provide an initial warning or reprimand, the Court notes that Plaintiff does not cite to *any evidence* in support of his arguments — not even excerpts of his own declaration or deposition.  (*Id.* at 5.)  Nor does Plaintiff specifically rebut Defendant's assertion that it sent him a letter of reprimand in 2015 for using a cell phone without a hands-free device while operating a City vehicle.  (*See id.*)  The Court finds that Plaintiff avers in his declaration in the following: that after he filed his March 2017 complaint "the retaliatory actions got worse"; Plaintiff "was suspended for the same infractions that other coworkers were not suspended for contrary to the City's Progressive Discipline and Procedures"; Defendant "failed to follow its own Progressive Discipline Procedures when exerting discipline against [him]"; and Defendant "concluded a sham fact-finding investigation process on March 9, 2017 without talking to any of the witnesses." (ECF No. 15-2 at 3–4.)  The foregoing statements, which are largely conclusory, are insufficient to show that Defendant's assertion that it followed its own progressive discipline policy is pretextual.

Plaintiff does not demonstrate "a genuine issue of material fact as to whether the reason advanced by the employer is pretext for retaliation." *Brooks*, 229 F.3d at 928; *see Loggins*, 151 Cal. App. 4th at 1112.  Accordingly, Defendant's motion with respect to Claim Four is GRANTED.

D.     Claim Three: Failure to Prevent Discrimination and Retaliation

Claim Three alleges failure to prevent discrimination and retaliation.  (ECF No. 1 at 5.) Defendant moves for summary judgment on this claim, arguing that because Plaintiff's discrimination and retaliation claims fail, this claim fails as well.  (ECF No. 14-1 at 26.)  Plaintiff does not address this argument or this claim at all in his opposition.  (*See* ECF No. 15.)

Courts have found that a claim for failure to prevent discrimination and retaliation under California Government Code § 12940(k) "is dependent on a claim of actual discrimination" or

1   retaliation. *Dickson v. Burke Williams, Inc.*, 234 Cal. App. 4th 1307, 1315–16 (2015) (citing state

2   and federal cases).  Further, "[t]here is no federal statute comparable to [§ 12940(k)]," but

3   "[r]ather, under federal law, the issue of whether there was a failure to take reasonable steps

4   necessary to prevent discrimination or harassment arises when defendant asserts as an affirmative

5   defense to a discrimination or harassment claim under 42 [U.S.C. §] 2000e et seq. that it took

6   steps to prevent harassment or discrimination." *Id.* at 1316.

7        In the instant case, Defendant does not raise such an affirmative defense.  Further, because

8   the Court grants Defendant's motion with respect to the discrimination and retaliation claims, a

9   claim for failure to prevent discrimination and retaliation under § 12940(k) cannot stand. *Id.* at

10  1315–16.  Accordingly, Defendant's motion with respect to Claim Three is GRANTED.

11       **IV.   CONCLUSION**

12       For the reasons set forth above, Defendant's Motion for Summary Judgment is hereby

13  GRANTED.  (ECF No. 14.)  The Clerk of the Court is directed to enter judgment in favor of

14  Defendant and close this case.

15       IT IS SO ORDERED.

16  **DATED:  August 15, 2022**

17

18

19                                    _____

20                                    Troy L. Nunley
                                      United States District Judge

21

22

23

24

25

26

27

28

26